WALKER *et al. v.* ATMORE *et al.*

*(Circuit Court of Appeals, Third Circuit. April 29, 1892.)*

1. WILLS—CONSTRUCTION—VESTED AND CONTINGENT REMAINDERS.

Testator directed that his wife should receive the interest on $5,000 during her-life; afterwards such interest to be paid to her daughters, E. and A.; if they or either of them died within 10 years from the date of the will, his son "to have the use of the said $5,000 by paying the interest to the children" of E. and A.; and, "after the death of both E. and A., (if they should die before the expiration of the above-mentioned ten years, at the expiration of the above-mentioned ten years, in case either or both the aforesaid E. or A. should have died,) the money shall be divided in two equal parts, and be divided between their children equally." The will then gave to the son all testator's real and personal property, after the debts and funeral expenses "and the above-mentioned $5,000 are paid or secured." *Held,* that the parenthetical clause was merely intended to preserve to the son the ten years' "use" before given, in case E. and A. died before that time, and that on the death of the testator the *corpus* of the property vested in the children of E. and A., and was not contingent upon the death of E. and A. before the expiration of the 10 years.

2. SAME—LEGACY—CHARGE ON LANDS.

The devise to the son of all the real and personal property, after paying the debts and "the above-mentioned $5,000," constituted the $5,000 a charge on the real estate.

3. SAME—EXECUTOR'S BOND.

The statutory bond given by the son as executor was merely for the faithful discharge of his official duties, and was not a security for the payment of the $5,000 legacy.

46 Fed. Rep. 429, affirmed.

Appeal from the Circuit Court of the United States for the District of Delaware.

In Equity. Bill by Jane Atmore, administratrix, and the heirs at law of Ann Jones, deceased, against John H. Walker, administrator *d. b. n. c. t. a.*, and the heirs at law and creditors, of Joseph Dean, for a construction of the will of the said Joseph Dean. Decree below was in favor of complainants. See 46 Fed. Rep. 429. Defendants appeal. Affirmed.

*Edward G. Bradford* and *Benj. Nields,* for appellants.

*H. Gordon McCouch,* for appellees.

Before ACHESON, Circuit Judge, and DALLAS and BUTLER, District Judges.

BUTLER, District Judge. Joseph Dean on the 6th of January, 1860, made a will which contains the following provisions:

"*Secondly.* I do direct that my beloved wife Jane Dean shall receive the interest of five thousand dollars during her lifetime in lieu of her dower at common law if she shall so elect, one hundred dollars on account of the first

year's interest of the five thousand dollars to be paid as soon after my death as possible. I do also direct that my beloved wife shall have whatever articles of household furniture she may think proper (at a fair valuation) of which I may die seised or possessed, in part payment on account of the first year's interest of said five thousand dollars. On the death of my beloved wife the interest of said five thousand dollars to be paid to her daughters, Elizabeth Scarborough and Ann Jones, in equal parts during their lives; in case of the death of either or both the aforesaid Elizabeth Scarborough and Ann Jones, before ten years from the date of this will, my son William Dean, is to have the use of the said five thousand dollars by paying the interest to the children of the said Elizabeth Scarborough and Ann Jones. After the death of both Elizabeth Scarborough and Ann Jones (if they should die before the expiration of the above-mentioned ten years, at the expiration of the above-mentioned ten years, in case either or both the aforesaid Elizabeth Scarborough or Ann Jones should have died,) the money shall be divided in two equal parts and be divided between their children equally, with the exception of Robert Kershaw; three hundred dollars of his share to be paid to my son William Dean, for a debt due the firm of Joseph Dean & Son, by Paul Keltz, of which Robert Kershaw received the benefit. *Thirdly.* I give and bequeath to my son, William Dean, after all my debts, funeral expenses and the above-mentioned five thousand dollars are paid or secured to be paid, the residue of my estate, real and personal, of all and every description, of which I may die seised or possessed."

The questions for consideration arise out of the foregoing provisions; and are: *First*, are the legacies to Elizabeth Scarborough's and Ann Jones' children vested or contingent? *Second*, are they charged on the land devised to William?

The appellees contend that they vested on the testator's death, and became a charge on the land devised; while the appellants claim that they were contingent on Elizabeth and Ann dying within 10 years after the date of the will; and that as Elizabeth and Ann survived this period, the legacies were lost.

The language of the testator does not seem to leave his intention doubtful. The general scheme of his will is obvious. It was to give his son William all his property, except $5,000; to give his widow the interest of this sum for life, and on her death to her daughters, (by a former husband,) Elizabeth and Ann; and after their deaths to give the principal to their children. He starts out with the provision for his wife,—setting aside $5,000, and giving the interest to her. On her death he gives the interest to Elizabeth and Ann; and in case they die within 10 years after the date of his will, he provides that his son William shall have the "use" of the $5,000, "by paying the interest" to Elizabeth's and Ann's children. Thus far his intention is not questioned; and it should be observed that if he had stopped here, the children would have taken the interest not for the ten years simply, but for life. William is given the "use" of the principal, and the children the interest without limitation as to time. What follows gives rise to the questions presented. It was added to dispose of the principal,—by conferring it on the children, and thus increasing the legacies before given them. The manifest intent, and effect of the language is to give them the $5,000 at their mother's death, reserving to William the "use" before mentioned,

in case the mothers die within the ten years. The language here employed to save William's "use" was, manifestly, interjected, parenthetically, when the thought occurred to the testator's mind that the use might otherwise be lost. When, however, the sentence is properly punctuated, it will not bear any other reasonable construction than the one stated. It is as follows: "After the death of Elizabeth and Ann (if they should die before the expiration of the above-mentioned ten years, at the expiration of the ten years, in case either or both the aforesaid Elizabeth and Ann should have died) the money shall be divided and be distributed between their children equally." That is to say: After the death of Elizabeth and Ann the $5,000 shall be thus divided among their children; if, however, the said Elizabeth and Ann shall die, within the period mentioned (during which William has been given the "use") it is to be divided at the expiration of that period. That the language here placed within parenthesis marks was inserted simply to save the "use" before given William, seems clear from its terms, and the context, as well as from the testator's manifest purpose to dispose absolutely of the $5,000,—and in doing so to *increase* the legacies previously given the children. A part of this language is pure repetition, and may be omitted in reading the sentence; it tends to confuse. The words "in case either or both the aforesaid Elizabeth and Ann should have died," express, in similar terms, precisely what is expressed two lines above. Omitting this repetition, the sentence reads: "After the death of both Elizabeth and Ann (if they shall die before the expiration of ten years, at the expiration of the above-mentioned ten years) the money shall be divided between their children." Now if the words within parenthesis marks are placed at the end of the sentence, (after a dash, or semicolon,) instead of being interjected near the beginning, there would seem to be no room whatever for the controversy which has arisen. Adding the word *however* between the words "if" and "they," so as to make the sentence read "if, however, they should die before the expiration of the ten years," etc., will produce the same effect. Such transposition is clearly permissible; it does not change the sense but simply serves to illustrate it. The word *however*, in the connection stated, is a plain implication from the context. The same effect is produced by simply breaking the flow of language in the sentence, by proper punctuation,—the addition of parenthesis marks as inserted above. That the courts may make such transpositions, insert implied words, and so punctuate, when the context or general scheme of distribution warrants it, is well settled. 3 Jarm. Wills, 708; *Chapman* v. *Brown*, 3 Burrows, 1634.

There is no occasion here to invoke the aid of canons of construction, —such as that legacies are to be construed vested, rather than contingent where the language will permit; that a testator must be presumed to intend the disposal of his entire estate, etc. Their only use is to assist in ascertaining the testator's purpose where it is obscure. Here, as we have seen, it is not.

The appellants admit that the language will bear this construction; but claim that it will also bear another, which favors the heirs at law;

and that the latter should therefore be adopted. It must be plain from what has been said that we do not think the language will bear another reasonable construction. To hold that it will, we must ignore the plain intent of the testator, expressed throughout the will, and find that he contemplated dying intestate as respects the $5,000, not only against the contrary legal presumption, but also against the plain import of his language relating directly to the subject—if not indeed against its express terms. In bequeathing the residue to William he not only takes pains to exclude the $5,000 from the bequest, but speaks of its payment in terms which seem to preclude the idea of contingency. The thought that the children might not receive it, under all circumstances, we think, never entered his mind.

That the legacies are charged on the land, is not open to question. The testator mingled his real and personal property together and gave the residue to William, after paying his debts and "the above-mentioned $5,000." Such language, under such circumstances has been uniformly held, in modern times, to create a charge on the testator's land. *Lewis* v. *Darling,* 16 How. 1; *Fenwick* v. *Chapman,* 9 Pet. 461. The rule in Delaware, where this land is located, is shown to be the same, by the decision in *Rambo* v. *Rumer,* 4 Del. Ch. 9.

The statutory bond given by William Dean, as executor, was intended to secure the faithful discharge of his official duties, and had no relation to the payment of this legacy. The time when it might become payable was uncertain, while the obligations of the bond were limited to six years; and expired long before the legacies became due. The bond did not, therefore, "secure" its payment, within the terms of the will, as the appellant urges. The decree of the circuit court is affirmed.